70  389
s77  563

ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY v.
DOOLEY.

Opinion delivered April 19, 1902.

RAILROAD—DEFECTIVE STILE—LIABILITY.—A railroad company which
built a stile leading over its fence to property owned by third
parties, and afterwards abandoned it, whereupon for several years
it was kept in repair by third persons for their own convenience,
will not be liable for injuries subsequently sustained by reason of
the stile becoming out of repair.

Appeal from Ouachita Circuit Court.

CHARLES W. SMITH, Judge.

Reversed.

*Dodge & Johnson,* for appellant.

Public highways are defined by the statute, and it makes no
distinction between wagon roads and foot roads. Sand. & H. Dig.,
§§ 6743, 6744, 6745. A person using a private way does so as a
mere licensee, and the railway company is not responsible for in-
juries sustained. Elliott, Railroads, §§ 1148-1151; 83 Wis. 547;
57 Wis. 600; 42 Ill. App. 93; 100 Ind. 223; 33 Mo. App. 85; 7
Fed. 78; 2 Sh. & Redf. Neg. § 705. For such way the owner is
not liable for repairs, because same leads to public highway. 115
N. Y. 55; 145 N. Y. 301. One who uses such private way must
assume all ordinary risks in going upon it. 34 N. J. L. 467; 92
Ala. 320; 9 Bush, 522. And must take the premises as he finds
them. 15 Mass. 47; 155 Mass. 472; 48 Ark. 491; Thomp.
Trials, § 2, p. 105; 29 Ohio St. 364; 59 Pa. 129; 48 Ark. 366.

*Thornton & Thornton,* for appellee.

Instructions to support any theory of the case supported by
the testimony should be given. 50 Ark. 549; 52 Ark. 47. The
building and keeping in repair of the bridge by appellant was an
invitation to the public. 87 Am. Dec. 644; 36 S. E. 232; 110 Ga.
779; 95 Ga. 430; 32 S. E. 551. Appellee was not a trespasser.
61 Pac. Rep. 689; Elliott, Railroads, § 1154. Where passengers are

allowed to use a private way, it is equivalent to an assurance of safety. Whit. Smith, Neg. 314; 32 S. W. 670; 95 Ga. 430; 20 N. Y. S. 347. Appellee was not a trespasser. 54 S. W. Rep. 1046. And appellant is liable for injuries sustained. 102 Mass. 584; 59 Me. 188; Whart. Neg. 826; 99 Mass. 216; Webb's Pollock, Torts, 627. The appellant was bound to repair the way. Elliott, Railroads, § 1146; 12 S. W. Rep. 210; 19 S. W. Rep. 1015; Pat. Ry. Acc. 156; 14 Am. & Eng. R. Cas. 681; 88 N. C. 129; 95 Ind. 361; 18 Ohio St. 399; 12 N. E. 451; 57 Me. 117; 83 Va. 99; 35 Md. 38; 59 Pa. St. 129; 65 Pa. St. 269; 115 Ind. 399; 38 Wis. 634; 72 Iowa, 650; 144 Ill. 628; 28 Minn. 103; 36 Minn. 147; 115 Mass. 190; 62 Tex. 344; 133 Mass. 121; 70 Tex. 496; 113 Pa. St. 162; 92 Pa. St. 335; 83 N. Y. 572; 50 Mo. 461; 102 Mass. 389.

BUNN, C. J. This is a suit by appellee against the appellant, for damages growing out of personal injuries alleged to have been inflicted upon the appellee by the carelessness and negligence of the appellant, by its failure to keep in repair a pair of steps leading over its right of way fence into an adjoining lot of private ownership, in the eastern suburb of the city of Arkadelphia, Clark county, Arkansas, by reason of which the same broke down with appellee when she attempted to cross over, and greatly injured her. Trial before a jury in the Ouachita circuit court, verdict in favor of plaintiff for $1,500, and judgment accordingly, from which defendant duly and in due time appealed to this court, assigning as error in its motion for a new trial: (1) That the verdict is contrary to law and instructions of the court; (2) that the verdict is contrary to the evidence; (3) that the court erred in giving, over the objection of defendant, instructions numbered 1, 2, 3 and 4 on the part of the plaintiff, and in each of the same; (4) that the court erred in refusing to give instruction 10 as asked on the part of the defendant; (5) that the court erred in modifying instruction 10 as asked on the part of defendant, and in giving the same in a modified form; (6) that the court erred in excluding testimony by defendant as to ownership of property adjacent to the steps in question; (7) that the verdict is excessive.

From the statement of the complaint, and from the testimony in the case, it appears that for many years there had been a byroad leading from the Ouachita river, below the city of Arkadelphia, to the southern portion of the city, and across the Iron Mountain railway in the neighborhood of its depot. This byroad had been

used by persons going fishing and for other local purposes, but in the course of time that locality was laid off into regular streets, one of which crossed the railroad but a little distance from where this byroad crosses it, and apparently was opened to take its place for the convenience of the public having use for the same.

About the year 1890, the defendant erected a fence along the eastern side of the right of way separating its property from the adjoining lots, then owned, as it appears, by one Dr. McGimpsie, and afterwards, and at the trial of this cause, owned by Mrs. Brown, an aunt of the appellee. That in that year, or during the year 1891, the appellant company, or its agents and servants, erected the steps over the fence at the point where this byroad had formerly crossed, and which had still been used by footmen up to this time, although for some longer time it had ceased to be used for the passage of vehicles, on account of the fence aforesaid and the opening of the street referred to above.

The evidence as to whether or not the defendant erected these steps in the first instance is quite indefinite. It is stated by one witness that one Kendrick, foreman of the fencing gang of defendant, was seen to have been making the steps at the time referred to, but whether for the defendant, or for Dr. McGimpsie or others interested, or for both, it is not shown. Nor is it shown that the defendant owed any duty to the public or to anyone to erect said steps, or that it had any interest whatever in the same. Kendrick had been dead at the time of the trial for six or seven years, and his version of it, of course, could not be had. But witness Walker, who was one of his hands, says that none of his gang erected or had anything to do with the steps.

But assuming, for the sake of argument, that the defendant really erected the steps, and for some purpose of its own, the controlling question of fact then is, whether or not the defendant had abandoned its care and oversight over the steps for a long time, and whether the owners and occupiers of adjoining lots had or had not assumed to do so for themselves and the convenience of others.

In reference to this point, the complaint is as follows: "That for some time thereafter (after the erection of the steps) the defendant kept said steps in repair for the use and benefit of the public, and invited and permitted the traveling public to use the same as a public thoroughfare, and thereby led the public to believe that they [the defendant] would keep the same in a safe condition.

That, notwithstanding it became and was the duty of the defendant to keep said steps in a safe condition, it failed for some time prior to the 29th day of December, 1897, to do so, but carelessly and negligently permitted them to become unsafe; and that, by reason of their unsafe condition, while plaintiff, in the exercise of ordinary care, was crossing over the same, on the date last named, as she had been invited by defendant to do so, they gave way and fell, and threw plaintiff to the ground violently, whereby she was crippled and injured," etc.

Among others, the court gave the following instruction touching this, asked by the defendant, to which there was no objection, to-wit: "No. 9. The court further instructs the jury that, even if they should find that the railroad company originally constructed the steps, but for a long period of time prior to the injury of the plaintiff refused to repair them, or to have anything to do with them, and that they (the railroad company) had suffered them to become dilapidated and unfit for use, and that they had been repaired by others having use for them, for their own convenience, then this would absolve the railroad company from all responsibility with reference thereto, and from injuries resulting from their being out of repair."

The evidence, without contradiction, shows that the steps, at least as far back as the latter part of 1894, had become dilapidated and unsafe for use, and that they were then and several times afterwards repaired by Mr. George Obaugh and his son. Mr. Obaugh resided in the adjoining lot to Mrs. Brown, and was in nowise connected with the defendant, but was shown to have acted on his own account.

Witness John Greene, testifying for plaintiff, and the only one testifying on this particular subject, states, on his examination in chief, that he saw the defendant at work on these steps three or four years (before testifying), as many as two or three times. The trial was on the 3d of November, 1899, and that would make the time of his having seen the repairing to be in 1895 or 1896. On cross-examination, however, he stated that he had not seen anyone repairing these steps except Mr. George Obaugh, and that was in the latter part of 1894; and as other undisputed testimony is to the effect that Mr. Obaugh repaired these steps with material from his own premises from that time on, and at several times, and as the immediate successors to Kendrick, and men working under Ken-

.drick, and under his successor, all deny that they had done any work on these steps, the conclusion is irresistible that there is no evidence that the defendant kept in repair, or had anything to do with, the steps since they were first built. The verdict was therefore contrary to the instruction of the court, which is in nowise conflicting or inconsistent with any of the other instructions. The verdict is therefore unsupported by the evidence, and for that reason the judgment is reversed, and cause remanded, with directions to grant defendant a new trial.